

FILED
IN OPEN COURT

DEC – 4 2019

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:19-CR-358 (AJT) |
| | ) | |
| v. | ) | <u>Count 1</u>: 18 U.S.C. § 371 |
| | ) | (Conspiracy) |
| MARKO NIKOLIC, | ) | |
| | ) | <u>Counts 2, 4, 6</u>: 18 U.S.C. § 1546 |
| and | ) | (Visa and Document Fraud) |
| | ) | |
| KATARINA MATIC, | ) | <u>Counts 3, 5</u>: 18 U.S.C. § 1001 |
| | ) | (False Statements) |
| Defendants. | ) | |
| | ) | **UNDER SEAL** |

## INDICTMENT

December 2019 Term – at Alexandria, Virginia

### COUNT 1

(Conspiracy)

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment, unless otherwise specified below:

#### Introductory Allegations: Persons, Entities and Terms

1.      MARKO NIKOLIC ("NIKOLIC") was born in 1988 in the former Yugoslavia, in Bosnia-Herzegovina.  NIKOLIC and his sister ("Sister") and mother ("Mother") had all come from the former Yugoslavia and became naturalized United States citizens, residing in Arizona. NIKOLIC became a naturalized U.S. citizen in December 2011. In approximately August 2012, NIKOLIC moved to the Eastern District of Virginia.

DEC - 4 2019

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

2.      KATARINA MATIC ("MATIC") was born in Serbia, in the former Yugoslavia, in 1984, and entered the United States on or about August 8, 2008, on a J-1 nonimmigrant visa to work as an au pair. MATIC, who is 4 years older than NIKOLIC, grew up in Serbia, where she was friends with NIKOLIC's Sister and used to babysit NIKOLIC.

3.      From approximately 2008 through 2010, MATIC caused to be filed immigration *petitions* and applications in order to be allowed to remain legally in the United States. MATIC resided in the Eastern District of Virginia.

4.      The Department of Homeland Security ("DHS") is an agency of the executive branch of the government of the United States that is responsible for, among other things, processing United States immigration benefits. Several agencies within DHS assist with administrating the immigration laws of the United States, including the United States Citizenship and Immigration Services ("USCIS"), formerly known as the Immigration and Naturalization Service ("INS"), which processes United States immigration benefits.

5.      DHS and USCIS are departments or agencies of the United States within the meaning of 18 U.S.C. § 6.

6.      USCIS has promulgated and used various forms for facilitating the award of U.S. immigration benefits. These forms include instructions informing applicants that USCIS relies upon the information provided on the forms, and that the forms must be completed truthfully and signed under penalty of perjury.

7.      In order to become a United States lawful permanent resident ("LPR"), which is also known as a green card holder, an alien must submit various petitions/applications and, when applicable, supporting documentation. Similarly, an alien seeking to have conditions removed must submit a petition and supporting documentation. A United States citizen may file a Form I-

130, Petition for Alien Relative, with USCIS on behalf of certain alien relatives to establish the existence of a relationship to certain alien relatives who wish to immigrate to the United States.

8.      Filing a Form I-130 is typically an initial step in obtaining LPR status for an alien relative of the United States citizen petitioner. The Form I-130 warns petitioners that "USCIS investigates claimed relationships and verifies the validity of documents. USCIS seeks criminal prosecutions when family relationships are falsified to obtain visas." By signing the Form I-130, the petitioner also certifies under penalty of perjury under the laws of the United States that the information on the Form I-130 is true and correct.

9.      An alien who was already present in the United States could file a Form 1-485, Application to Register Permanent Resident or Adjust Status, with USCIS to become an LPR. The Form I-485 application has to be signed under penalty of perjury of the laws of the United States and be accompanied by certain supporting documentation that provides information about the alien.

10.      In the case of a petitioner who has been married for fewer than two years to an alien relative beneficiary, if the Form I-485, based on an approved Form I-130, is favorably adjudicated, the alien relative will receive conditional LPR status for a period of two years. Conditional status is granted in such situations because the LPR must prove that the marriage had been entered in good faith and was not for the purpose of circumventing immigration laws. To remove conditional status and thereby stay in the United States permanently, a conditional status LPR and petitioner may jointly file a Form I-751, Petition to Remove Conditions on Residence, within the 90-day period immediately before the conditional status expires. The Form I-751 petition has to be signed under penalty of perjury of the laws of the United States and be accompanied by supporting

documentation, which should also demonstrate any circumstances surrounding the end of the relationship, if it has ended.

11.     When a Form I-130 petition to become an LPR is based on marriage, USCIS may require the alien and petitioner to appear for an interview and bring copies of the original paperwork and identification documents. USCIS may also request additional documentation regarding the marriage, such as photographs and evidence that the alien and petitioner are in fact living as a married couple, as shown by things such as lease agreements and joint financial accounts.

12.     Similarly, when seeking to remove conditions of the LPR status when based on marriage, USCIS may require the petitioner and alien to attend an interview and/or provide supporting documentation. Such supporting documentation may include, but is not limited to, bank records, tax returns, residential leases and photographs.

13.     Information on the Forms I-130, I-485, and I-751, as well as the supporting documentation and statements made in connection with any interview by USCIS, are material to the adjudication of petitions and applications for immigration benefits and are used by USCIS in determining whether to award such benefits. When the petition and application is based on marriage to a U.S. citizen, USCIS seeks information to determine whether the marriage had been entered in good faith and was not for the purpose of circumventing immigration laws.

14.     In attempting to determine whether a marriage had been entered in good faith and was not for the purpose of circumventing immigration laws, some of the factors that USCIS examines include: whether the spouses live together, whether they act and hold themselves out as a married couple (such as by taking vacations, celebrating holidays together), and whether they

have joint or shared finances. USCIS also considers whether the couple are dating or romantically involved with people outside of the marriage.

15. Beginning in or around November 2011, MATIC began to encounter difficulties obtaining permission from USCIS to remain in the United States lawfully.

16. In or about August 2012, NIKOLIC moved from Arizona to Virginia purportedly in order to be with MATIC and for work. NIKOLIC and MATIC initially lived in an apartment in Lorton, in the Eastern District of Virginia. NIKOLIC initially worked for a pool company where MATIC was his supervisor.

17. On or about August 14, 2012, MATIC and NIKOLIC entered into a marriage in Alexandria, Virginia in a civil ceremony. No family for MATIC or NIKOLIC attended the ceremony. Also on or about August 14, 2012, NIKOLIC applied for a law enforcement positon with the Alexandria Sheriff's Office and signed an Applicant Background questionnaire.

18. On or about March 15, 2013, NIKOLIC was sworn in as a Deputy Sheriff of the Alexandria Sheriff's Office, a position he held until approximately January 24, 2018. As a Deputy Sheriff, NIKOLIC attended the Northern Virginia Criminal Justice Training Academy, from which he graduated on or about June 26, 2014. As both a former Corrections Officer in Arizona, and as a Deputy Sheriff in Virginia, NIKOLIC understood the importance of telling the truth in official proceedings.

19. In or around February 2014, NIKOLIC and MATIC moved to an apartment in Alexandria, in the Eastern District of Virginia, identified here as Apartment #807. During the marriage, NIKOLIC and MATIC each maintained separate bedrooms and generally held themselves out to their friends and their respective romantic interests as "roommates" or friends.

Friends and family who learned NIKOLIC and MATIC were married understood that it was an "advantageous marriage" for the purpose of obtaining immigration benefits for MATIC.

20.     From approximately Spring 2011 through at least Spring 2014, NIKOLIC was involved in numerous romantic relationships with various women.

21.     Individual M.D. was a woman whom NIKOLIC met in or around January 2014, and with whom NIKOLIC was involved in a romantic relationship from approximately February 2014 through May 2015, when they initially broke up. NIKOLIC and Individual M.D. resumed the relationship again in or around November 2015 and dated until approximately June 2016. Individual M.D. and NIKOLIC dated openly, with the full knowledge of NIKOLIC's Sister and Mother, as well as the full knowledge and approval of MATIC.

22.     Individual Dusan M. was a man with whom MATIC was in a romantic relationship from in or around July 2014 onward, and with whom MATIC had a child on or about June 5, 2016. Individual Dusan M. and MATIC dated openly, with the full knowledge and approval of NIKOLIC, as well as NIKOLIC's Sister and Mother.

23.     In or around May 2016, MATIC and Individual Dusan M. moved in together into an apartment identified here as Apartment # 212 in the same building in Alexandria as Apartment # 807.

24.     In or around 2016, NIKOLIC and MATIC filed for divorce in Alexandria, Virginia.

25.     On or about May 14, 2017, a Final Order of Divorce was signed by a judge and filed in court in Alexandria, Virginia, legally dissolving the marriage of NIKOLIC and MATIC.

**Introductory Allegations: Immigration Benefits Sought**

26.     On or about December 19, 2012, NIKOLIC signed under penalty of perjury a Form

I-130, Petition for Alien Relative, identifying MATIC as his wife, and thereby asking for her to be

allowed to remain in the United States on the basis of her marriage to NIKOLIC.

27.     On or about December 19, 2012, MATIC signed under penalty of perjury a Form

I-485, Application to Register Permanent Residence or Adjust Status, in order to become an LPR,

or green card holder, on the basis of her marriage to NIKOLIC.  Also, by signing the Form I-485,

MATIC falsely certified that "I have not withheld any information that would affect the outcome

of this application."

28.     On or about January 16, 2013, the above-described Forms I-130 and I-485, signed

respectively by NIKOLIC and MATIC, were mailed to USCIS and received shortly thereafter.

29.     On or about April 12, 2013, a USCIS Immigration Officer interviewed MATIC and

NIKOLIC in relation to Forms I-130 and I-485 in Fairfax, in the Eastern District of Virginia.  On

or about April 12, 2013, USCIS approved Forms I-130 and I-485 based on the evidence submitted

and the interview, granting MATIC conditional LPR status since MATIC and NIKOLIC had been

married less than two years at the time of approval of the Form I-485.

30.     On or about March 19, 2015, NIKOLIC and MATIC jointly filed with USCIS Form

I-751, Petition to Remove Conditions on Residence, falsely signing under penalty of perjury that

the petition and evidence submitted with it is all true and correct, and further falsely certifying that

their marriage had been entered in good faith and was not for the purpose of circumventing

immigration laws.  In support of their jointly-filed Form I-751, NIKOLIC and MATIC submitted

documentation and evidence, including photographs of them, tax returns, bank statements for a

joint account at Capital One, and joint auto insurance records, produced, selected and arranged in

order to create the false impression that their marriage had been entered in good faith and was not for the purpose of circumventing immigration laws.

31.     On or about October 27, 2016, in Fairfax, in the Eastern District of Virginia, USCIS officers conducted an interview of NIKOLIC under oath concerning the good faith of his marriage to MATIC and the circumstances surrounding the end of the relationship, and the supporting documents and forms the two had submitted to USCIS since 2013 for the purpose of procuring immigration benefits for MATIC. At the conclusion of the interview, type-written, specific questions were presented to NIKOLIC and his lawyer for review, signature and affirmation under penalty of perjury under the laws of the United States. As detailed further below, NIKOLIC knowingly made materially false and misleading statements in the interview and in the sworn statement, and intentionally failed to disclose material facts, all for the purpose of evading and defeating the immigration laws of the United States, and unlawfully to obtain immigration benefits for MATIC.

32.     On or about July 5, 2017, NIKOLIC and MATIC caused the submission to USCIS of the following documents, among others, in support of the Form I-751:

        a.   A notarized Statement in Support of Form I-751 signed by NIKOLIC on or about March 3, 2017, which contained material falsehoods and partial truths designed to cover-up and clean-up the material falsehoods he had provided to USCIS earlier on October 27, 2016; and

        b.   A notarized Statement in Support of Form I-751 signed by MATIC on or about June 23, 2017.

33.     On or about September 8, 2017, in Fairfax, in the Eastern District of Virginia, a USCIS officer conducted an interview of MATIC under oath concerning the good faith of her

marriage to NIKOLIC and the circumstances surrounding the end of the relationship. This interview also concerned the supporting documents and forms that MATIC and NIKOLIC had submitted to USCIS since 2013 for the purpose of procuring immigration benefits for MATIC. At the conclusion of the interview, type-written, specific questions were presented to MATIC and her lawyer for review, signature and affirmation under penalty of perjury under the laws of the United States. As detailed further below, MATIC knowingly made materially false and misleading statements in the interview and in the sworn statement, and intentionally failed to disclose material facts to USCIS, all for the purpose of evading and defeating the immigration laws of the United States, and unlawfully to obtain immigration benefits for MATIC.

### The Conspiracy and its Objects

34.     From a date unknown but not later than in or around 2013 and continuing through the date of this Indictment, in the Eastern District of Virginia and elsewhere, defendants MARKO NIKOLIC, KATARINA MATIC, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other, as follows:

> a.  to defraud the United States, that is, to knowingly and willfully impair, obstruct, and defeat the lawful functions of DHS, including USCIS, with respect to the application, review, investigation, and decision-making process for immigration benefits, in violation of Title 18, United States Code, Section 371;
>
> b.  to make under oath, and as permitted under penalty of perjury, knowingly to subscribe as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, and knowingly presenting any

such application, affidavit, and other document which contained any such false statement or which fails to contain any reasonable basis in law or fact, in violation of Section 1546(a) of Title 18, United States Code; and

    c.   in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully to falsify, conceal, or cover up by any trick, scheme, or device a material fact, and to make materially false, fictitious, or fraudulent statements or representations, in violation of Title 18, United States Code, Section 1001.

35.    It was a purpose and object of the conspiracy for NIKOLIC, MATIC, and others to provide false, fraudulent, and misleading information to, and to conceal facts from, USCIS regarding petitions and applications for immigration benefits for MATIC.

36.    It was a purpose and object of the conspiracy to obtain LPR status, or green card status for MATIC by attempting to mislead USCIS into believing that NIKOLIC and MATIC had entered the marriage in good faith and not for the purpose of circumventing immigration laws, and to conceal the circumstances surrounding the end of the relationship during the two-year conditional residency period.

37.    It was a purpose and object of the conspiracy to cover-up the criminal agreement described herein through various material misrepresentations of fact to, and further concealment of material facts from, USCIS.

**Manner and Means of the Conspiracy**

In furtherance of the conspiracy, and to accomplish its unlawful objects, the following manner and means were used, among others:

10

38.     NIKOLIC and MATIC would jointly and separately submit immigration petitions and applications to USCIS falsely certifying that their marriage was not for the purpose of procuring an immigration benefit.

39.     NIKOLIC and MATIC would submit to USCIS selective documents, including tax returns, rental agreements, bank records, automobile records, couples photographs, and letters in support of their petitions and applications designed to create the false impression that their marriage had been entered in good faith and was not for the purpose of circumventing immigration laws.

40.     NIKOLIC and MATIC would verbally under oath in interviews with USCIS personnel, and in written sworn statements made under penalty of perjury of the United States at the conclusion of such interviews, and in other documents submitted to USCIS, knowingly make materially false statements of fact, and knowingly and intentionally omit material facts, concerning, among things:

      a.   the true chronology of NIKOLIC's romantic relationship with Individual M.D. by falsely indicating that it began in 2015;

      b.   the true chronology of MATIC's romantic relationship with Individual Dusan M., by falsely indicating that it began in 2015;

      c.   falsely indicating to USCIS that they had not been romantic with other partners in the presence of each other; and

      d.   attempting to create the false impression with USCIS that NIKOLIC thought he could have been the father of the child of MATIC and Individual Dusan M.

## **Acts in Furtherance of the Conspiracy**

The acts in furtherance of the conspiracy included, but were not limited to, the following:

41. The allegations contained in Paragraphs 26-33 of this Indictment are hereby incorporated by reference as if set forth in full.

42. On or about October 27, 2016, in the Eastern District of Virginia, under oath with USCIS officers, NIKOLIC made, among others, the following materially false statements and omissions of material facts:

          a. NIKOLIC falsely stated that he had begun dating MATIC in 2011 and that he had stopped dating women other than MATIC in 2011, when, in truth and in fact, as he then well knew, he had been dating other women throughout the period 2011-2016.

          b. NIKOLIC falsely stated that he had only begun his extramarital relationship with Individual M.D. in the summer of 2015, when in truth and in fact, as he then well knew, he had begun the extramarital relationship with Individual M.D. no later than in or around June 2014.

          c. when asked if other than with Individual M.D. he had any other extramarital affairs, NIKOLIC falsely replied "no," when in truth and in fact, as he then well knew, NIKOLIC had also engaged in extramarital sexual relationships with other women.

          d. When asked whether he had any reason to believe the child of MATIC was not his, NIKOLIC falsely replied, "no," and at another point in the interview falsely stated that "as far as I know, I am the father of the child," when, in

truth and in fact, as he then well knew, the child was that of MATIC and Individual Dusan M., not his.

43.     In the Record of Sworn Statement, signed under penalty of perjury of the laws of the United States, and presented to USCIS on or about October 27, 2016, in the Eastern District of Virginia, at the conclusion of his interview with USCIS, NIKOLIC made, among others, the following materially false statements and omissions of material facts:

a.   In answer to the question of when the romantic relationship with MATIC had ended, the defendant falsely stated that his relationship with MATIC ended in May-June of 2016 when their lease was up, when in truth and in fact, as the defendant then well knew, he was not in a romantic relationship with MATIC and was engaged in romantic relationships with multiple other women during the course of the marriage.

b.   In answer to the question, "are you the father of the child?" NIKOLIC falsely stated, "As far as I know I'm the father of the child," when, in truth and in fact, as he then well knew, the child was that of Individual Dusan M. and publicly held out as such.

c.   In response to the question of whether he had any reason to doubt the child was not his, NIKOLIC falsely answered that "as far as I know, she never cheated on me," when in truth and in fact, as he then well knew, the child was that of Individual Dusan M.; MATIC and Individual Dusan M. were cohabitating and romantically involved; and MATIC publicly represented the child as the son of Individual Dusan M.

d.  In answer to the question, "With who were you unfaithful?" the defendant
falsely stated "[Individual M.D]. I was only unfaithful with [Individual
M.D.]. Me and [Individual M.D.] are not in a relationship and we only saw
each other throughout 2015. Maybe from summer to the winter 2015." In
truth and in fact, as NIKOLIC well knew, he had been unfaithful with
additional women from 2011-2016, and his relationship with Individual
M.D. spanned 2014-2016, with some interruption.

e.  To the question of "when were you unfaithful" to MATIC, NIKOLIC
falsely and misleadingly replied, "in 2015, in periods," which intentionally
omitted the material facts that he had been unfaithful with multiple partners
from 2011-2016.

44.  On or about September 8, 2017, in Fairfax, in the Eastern District of Virginia, under
oath and in a videotaped interview with a USCIS Immigration Officer, MATIC made, among
others, the following materially false statements and omissions of material facts:

a.  MATIC falsely stated that she was "suspicious" that NIKOLIC was
"cheating" with other women during the marriage, when, in truth and fact,
as she then well knew, there was no cheating to be suspicious about because
NIKOLIC was free to have intimate relationships with other women, and
did so openly in the apartment the two shared and elsewhere, with the
knowledge and approval of MATIC.

b.  MATIC falsely stated that she only began to have a relationship with
Individual Dusan M. in 2015, and that two had merely been friends during

2014, when, in truth and in fact, as she then well knew, she began her romantic relationship with Individual Dusan M. in or around July 2014.

c. In response to the question, "Did Marko know about your relationship with Dusan," MATIC misleadingly and incompletely stated, "I don't think he figured out right away."

d. When asked whether NIKOLIC and Individual M.D. "were romantically involved in front of you," MATIC falsely responded "no," when, in truth and in fact, as she then well knew, NIKOLIC and Individual M.D. had been romantically involved together in the presence of MATIC on a number of occasions, just as MATIC had been romantically involved with Individual Dusan M. in the presence of NIKOLIC and Individual M.D.

e. MATIC falsely stated that Individual M.D. did not stay the night with NIKOLIC in the apartment he shared with MATIC, when, in truth and in fact, as she then well knew, Individual M.D. had stayed the night in the apartment with the knowledge and approval of MATIC.

f. MATIC falsely denied having knowledge at the time of the "affair" between NIKOLIC and Individual M.D.

45.    In the Record of Sworn Statement, signed under penalty of perjury of the laws of the United States, and presented to USCIS on or about September 8, 2017, in the Eastern District of Virginia, at the conclusion of her interview with USCIS, MATIC made, among others, the following materially false statements and omissions of material facts:

a. In answer to the question, "When did your relationship with [Individual Dusan M.] first begin"? MATIC falsely stated, "Summer of 2015," when,

in truth and in fact, as she then well knew, she began her romantic relationship with Individual Dusan M. in or around July 2014.

b.  In response to the question of where her child's name came from, after stating that she consulted with Individual Dusan M., MATIC offered the misleading statement that, "I never affirmatively told Marko that he was not the father of the child until around November 2016. It was in 2017. We had a DNA test. It was in May 2017." In truth and in fact, as MATIC then well knew and chose to conceal from USCIS, she had no reason to tell NIKOLIC that the child was not his, because she and Individual Dusan M. publicly held Individual Dusan M. out as the father of the child at all times.

(In violation of Title 18, United States Code, Section 371).

## COUNT 2

### (Visa and Document Fraud)

46.     The allegations contained in Paragraphs 1-29 of this Indictment are hereby incorporated by reference as if set forth in full.

47.     On or about March 19, 2015, in the Eastern District of Virginia and elsewhere, defendants MARKO NIKOLIC and KATARINA MATIC knowingly made under oath, or as permitted under penalty of perjury, and knowingly subscribed as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, and knowingly presented any such application, affidavit, and other document which contained any such false statement or which fails to contain any reasonable basis in law or fact, to wit:

   a.  NIKOLIC and MATIC jointly filed Form I-751, Petition to Remove Conditions on Residence, signing under penalty of perjury that the petition and evidence submitted with it is all true and correct, and further falsely certifying that their marriage was not for the purpose of procuring an immigration benefit.

(In violation of Title 18, United States Code, Sections 1546 and 2.)

## COUNT 3

(False Statements)

48.     The allegations contained in Paragraphs 1-30 of this Indictment are hereby incorporated by reference as if set forth in full.

49.     On or about October 27, 2016, in the Eastern District of Virginia and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, defendant MARKO NIKOLIC did knowingly and willfully falsify, conceal, or cover up by any trick, scheme, or device a material fact, and made materially false, fictitious, or fraudulent statements or representations, during an interview under oath with officers of USCIS, as indicated below:

a.   NIKOLIC falsely stated that he had begun dating MATIC in 2011 and that he had stopped dating women other than MATIC in 2011, when, in truth and in fact, as he then well knew, he had been dating other women throughout the period 2011-2016.

b.   NIKOLIC falsely stated that he had only begun his extramarital relationship with Individual M.D. in the summer of 2015, when in truth and in fact, as he then well knew, he had begun the extramarital relationship with Individual M.D. no later than in or around June 2014.

c.   when asked if other than with Individual M.D. he had any other extramarital affairs, NIKOLIC falsely replied "no," when in truth and in fact, as he then well knew, NIKOLIC had also engaged in extramarital sexual relationships with other women.

    d.  When asked whether he had any reason to believe the child of MATIC was not his, NIKOLIC falsely replied, "no," and at another point in the interview falsely stated that "as far as I know, I am the father of the child," when, in truth and in fact, as he then well knew, the child was that of MATIC and Individual Dusan M., not his.

(In violation of Title 18, United States Code, Section 1001.)

## COUNT 4

### (Visa and Document Fraud)

50.     The allegations contained in Paragraphs 1-30 of this Indictment are hereby incorporated by reference as if set forth in full.

51.     On or about October 27, 2016, in the Eastern District of Virginia and elsewhere, defendant MARKO NIKOLIC, in a Record of Sworn Statement made in support of Form I-751, signed under penalty of perjury of the laws of the United States, and presented to USCIS, knowingly made under oath, or as permitted under penalty of perjury, and knowingly subscribed as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, and presented any such application, affidavit, and other document which contained any such false statement or which fails to contain any reasonable basis in law or fact, to wit:

      a.  In answer to the question of when the romantic relationship with MATIC had ended, the defendant falsely stated that his relationship with MATIC ended in May-June of 2016 when their lease was up, when in truth and in fact, as the defendant then well knew, he was not in a romantic relationship with MATIC, and was engaged in romantic relationships with multiple other women during the course of the marriage.

      b.  In answer to the question, "are you the father of the child?" NIKOLIC falsely stated, "As far as I know I'm the father of the child," when, in truth and in fact, as he then well knew, the child was that of Individual Dusan M. and publicly held out as such.

c.  In response to the question of whether he had any reason to doubt the child was not his, NIKOLIC falsely answered that "as far as I know, she never cheated on me," when in truth and in fact, as he then well knew, the child was that of Individual Dusan M., and MATIC and Individual Dusan M. were cohabitating and romantically involved, and MATIC publicly represented the child as that on Individual Dusan M.

d.  In answer to the question, "With who were you unfaithful?" the defendant falsely stated "[Individual M.D]. I was only unfaithful with [Individual M.D.]. Me and [Individual M.D.] are not in a relationship and we only saw each other throughout 2015. Maybe from summer to the winter 2015." In truth and in fact, as NIKOLIC well knew, he had been romantically involved with several women from 2011-2016, and his relationship with Individual M.D. spanned 2014-2016, with some interruption.

e.  To the question of "when were you unfaithful" to MATIC, NIKOLIC falsely and misleadingly replied, "in 2015, in periods," which intentionally omitted the material facts that he had been romantically involved with several women from 2011-2016.

(In violation of Title 18, United States Code, Section 1546).

## COUNT 5

### (False Statements)

52.     The allegations contained in Paragraphs 1-32 of this Indictment are hereby incorporated by reference as if set forth in full.

53.     On or about September 8, 2017, in the Eastern District of Virginia and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, defendant KATARINA MATIC did knowingly and willfully falsify, conceal, or cover up by any trick, scheme, or device a material fact, and made materially false, fictitious, or fraudulent statements or representations, during an interview under oath with officers of USCIS, as indicated below:

      a.  MATIC falsely stated that she was "suspicious" that NIKOLIC was "cheating" with other women during the marriage, when, in truth and fact, as she then well knew, there was no cheating to be suspicious about because NIKOLIC was free to have intimate relationships with other women, and did so openly in the apartment the two shared and elsewhere, with the knowledge and approval of MATIC.

      b.  MATIC falsely stated that she only began to have a relationship with Individual Dusan M. in 2015, and that two had merely been friends during 2014, when, in truth and in fact, as she then well knew, she began her romantic relationship with Individual Dusan M. in or around July 2014.

      c.  In response to the question, "Did Marko know about your relationship with Dusan," MATIC misleadingly and incompletely stated, "I don't think he figured out right away."

    d.   When asked whether NIKOLIC and Individual M.D. "were romantically involved in front of you," MATIC falsely responded "no," when, in truth and in fact, as she then well knew, NIKOLIC and Individual M.D. had been romantically involved together in the presence of MATIC on a number of occasions, just as MATIC had been romantically involved with Individual Dusan M. in the presence of NIKOLIC and Individual M.D.

    e.   MATIC falsely stated that Individual M.D. did not stay the night with NIKOLIC in the apartment he shared with MATIC, when, in truth and in fact, as she then well knew, Individual M.D. had stayed the night in the apartment with the knowledge and approval of MATIC.

    f.   MATIC falsely denied having knowledge at the time of the "affair" between NIKOLIC and Individual M.D.

(In violation of Title 18, United States Code, Section 1001.)

## COUNT 6

### (Visa and Document Fraud)

54.     The allegations contained in Paragraphs 1-32 of this Indictment are incorporated by reference as if set forth in full.

55.     On or about September 8, 2017, in the Eastern District of Virginia and elsewhere, defendant KATARINA MATIC, in a Record of Sworn Statement made in support of Form I-751, signed under penalty of perjury of the laws of the United States, and presented to USCIS, knowingly made under oath, or as permitted under penalty of perjury, and knowingly subscribed as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, and presented any such application, affidavit, and other document which contained any such false statement or which fails to contain any reasonable basis in law or fact, to wit:

    a.  In answer to question "When did your relationship with [Individual D.M.] first begin"? MATIC falsely stated "Summer of 2015," when, in truth and in fact, as she then well knew, she began her romantic relationship with Individual Dusan M. in or around July 2014.

    b.  In response to the question of where her child's name came from, after stating that she consulted with Individual Dusan M., MATIC offered the false and misleading statement that, "I never affirmatively told Marko that he was not the father of the child until around November 2016. It was in 2017. We had a DNA test. It was in May 2017." In truth and in fact, as MATIC then well knew and chose to conceal from USCIS, she had no reason to tell NIKOLIC that the child was not his, because she and

Individual Dusan M. publicly held Individual Dusan M. out as the father of the child at all times.

(In violation of Title 18, United States Code, Section 1546).

G. Zachary Terwilliger
United States Attorney

By: _____
Russell L. Carlberg
Special Assistant United States Attorney
Raizza Ty
Assistant United States Attorney

A TRUE BILL
Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

_____
FOREPERSON OF THE GRAND JURY